## Margaret Englemann v. Desire Reuse.

*Mortgage—To secure loan made on condition that prior liens are to be satisfied—Money paid by mortgagee to agent who negotiated loan for mortgagor—He promising to see that such incumbrances are paid—Duty of mortgagor to see to such payment—If not made, mortgagee not liable for default—Amount unpaid cannot be deducted from his mortgage.*

1. Complainant's land was incumbered by four mortgages, aggregating $2,700, and she was desirous of loaning $800 for building purposes. A banker in Detroit having money in his hands for investment communicated her desire to the owner of the money. who agreed to loan complainant $3,500, to be secured by a first mortgage on the land, it being understood that the existing liens should be satisfied. The parties met at the banker's office in February, 1881, where the $3,500 mortgage and note were executed, the money paid over to the banker, and the note delivered to the mortgagee, the banker promising to have the title to the land cleared, the money being left in his hands for that purpose. He paid three of the mortgages, leaving the fourth, amounting to $556, unpaid, and complainant drew the balance of the money, except the $556, from his hands from time to time, he allowing her interest at seven per cent. on this reserved sum, and charging her one per cent. thereon, said unpaid mortgage bearing interest at eight per cent. Interest was paid to the mortgagee in full up to August 13, 1883, when a payment of $1,600 was made on the principal, and a part of the land released. The debt matured the following February, but was not paid, owing to the failure of the banker. After its maturity the mortgage was assigned to defendant, who began foreclosure proceedings *at law*, claiming the *full* amount secured thereby, excepting the aforesaid payments; whereupon complainant filed a bill to determine the amount due on the mortgage, and showing the non-payment of the $556 mortgage, which sum she sought to have deducted from the principal of defendant's mortgage, and an accounting on that basis.

*Held,* that it was the complainant's business to have the title cleared so as to make the *new* mortgage a *first* lien on the land, and that the promise of the banker to this effect was evidently made to the mortgagee, and not to complainant, and that this was to be accomplished by the use of the money loaned to complainant and left in the banker's hands for that purpose.

Appeal from Macomb. (Stevens, J.) Argued May 4, 1886. Decided May 12, 1886.

Bill filed for an accounting, etc. Complainant appeals. Affirmed. The facts are stated in opinion and summarized in head-note.

*William Look* and *Edgar Weeks,* for complainant.

*A. L. Canfield,* for defendant.

[Briefs confined to a discussion of the testimony. No authorities cited.—REPORTER.]

CAMPBELL, C. J. The bill in this case was filed to determine the sum due on a mortgage made in February, 1881, by complainant to Desiderius Collaert, for $3,500, and interest, which was assigned by the mortgagee to defendant. It is agreed that the defendant holds it on the same equities as the mortgagee. Complainant claims that it should be reduced by the amount of $556 and interest. A payment reducing the principal by $1,600 is not in controversy. This $556 is the amount of a prior mortgage on the same property held by David Trombley, and was in the hands of Joseph Kuhn to pay to Trombley whenever he would accept it in discharge of his mortgage, which was running at 8 per cent., and which he preferred holding till due. Mr. Kuhn failed while the Trombley mortgage was outstanding, and the question is whether the loss falls on complainant or on defendant.

There is some conflict on the facts, arising, probably, more out of the inferences of the witnesses than out of the dealings themselves. We shall only give such an outline as will explain how the difficulty arose.

. Mr. Collaert, who is a priest in the Roman Catholic Church, living at Manistee, had some money in his hands to be invested, and Joseph Kuhn, a banker. and loan agent in Detroit, was informed of the fact. Complainant owned some land in Macomb county, on which there were four mortgages to different persons, for the aggregate amount of about $2,700. She was anxious to borrow about $800 for building purposes, and applied to Mr. Kuhn to procure it. He communicated with Mr. Collaert, who agreed to make a loan of $3,500, to be made a first security. This was expected to be done by applying as much as should be necessary to extinguishing the existing mortgages, so as to leave not far from $800 beyond them available for such purposes as complainant might choose.

On the date of the mortgage the parties met at Mr. Kuhn's office in Detroit. The mortgage and note for $3,500 were drawn up and executed, and Mr. Collaert, who had drawn the money for the purpose from a savings bank in Detroit that morning, produced and paid it over. The note was, as we are satisfied, handed over to him, and the mortgage was recorded and sent to him. Mr. Kuhn promised to have the title cleared. The money, after payment, was left in Kuhn's hands, who paid, or furnished means for paying, all the mortgages but the Trombley mortgage; and Mrs. Englemann from time to time drew the balance except the $556. That mortgage being at 8 per cent., Mr. Kuhn allowed her 7 per cent. interest on the amount retained, and she was charged and apparently paid, or had deducted from her credits, 1 per cent.

Interest was paid Mr. Collaert on the entire loan of $3,500 up to August 13, 1883, when $1,600 was also paid on the principal and a part of the land released. The whole debt matured in February, 1884. The whole difficulty arose out of Mr. Kuhn's failure, so that the money to pay Trombley was not forthcoming.

After its maturity Mr. Collaert transferred the mortgage to defendant, who began a foreclosure at law, claiming the whole sum secured except the $1,600 of principal, and the

interest to August, 1883, which had been received on it. Complainant filed her bill to redeem, insisting that the $556 had not been paid. to her, and that Kuhn held it as Collaert's agent, and not on complainant's account.

The court below rejected this claim, and held the defendant entitled to the whole face of the mortgage so far as not paid. We think the decree was right.

Mr. Kuhn's testimony leaves no doubt on this question, and we are satisfied it is in accordance with the circumstances and probabilities. Mr. Collaert never left any money in his hands for investment, but produced the $3,500 personally, and handed it over on the execution of the papers.

It is the debtor's and not the creditor's business to have the title cleared so as to make the security a first mortgage, and when Kuhn promised to have this done it was evidently a promise to Collaert, and not to complainant. If he was, as he probably was, expected to see to the extinguishment of the prior mortgages out of the moneys left in his hands, it was to be done out of the moneys lent to complainant, and not out of Collaert's money. It would have been an uncommon transaction, at least, for a man lending money as an investment to leave the largest share of it entirely unsecured for an indefinite period, with no arrangement as to interest, or any other condition for his benefit. There is, in our opinion, no probability that Collaert would have been so entirely lacking in good sense.

Complainant paid full interest on the whole amount of the note and mortgage, in August, 1883, with no question or dispute as to its full validity. Had the amount of the Trombley mortgage been deducted, the sum due for interest would have been considerably smaller than was paid, without question.

We think the decree was correct, and it must be affirmed, with costs.

The other Justices concurred.