[No. 24584.  *En Banc.*  October 17, 1933.]

JOHN CLEMSON, *Respondent,* v. R. A. BEST, *Appellant.*[1]

[1]Reported in 25 P. (2d) 1032.

*Robert A. Devers,* for appellant.
*Cosgrove & Terhune,* for respondent.

BLAKE, J.—This is an action to foreclose a mortgage on real estate. From a judgment for the plaintiff, defendant appeals.

Shortly prior to March 18, 1926, the appellant went to A. B. Germain, a loan broker in Seattle, for the purpose of securing a loan on the property here involved. At the time, there were outstanding taxes and assessments against the property amounting to about seven hundred and fifty dollars. Appellant told Germain he wanted to borrow enough to cover the assessments and two hundred fifty dollars additional. Germain told him that he would charge two hundred dollars commission for obtaining the loan. This, appellant agreed to.

On March 18, 1926, appellant executed a note and mortgage for twelve hundred dollars, bearing interest at eight per cent per annum, and due in three years. These he delivered to Germain. Appellant claims that the name of the payee and mortgagee was left blank in the instruments when he delivered them. This, however, we deem of no importance. It is conceded that appellant and respondent never met until shortly prior to the maturity of the loan.

Germain procured twelve hundred dollars from respondent and delivered the note and mortgage to him. From the proceeds of the loan, Germain gave appellant two hundred fifty dollars and retained two hundred dollars on account of the commission appellant had agreed to pay. The past due assessments were not paid by Germain, but we think this is immaterial, because the testimony is quite conclusive, to our minds, that Germain expended the balance for the use and benefit of appellant and under his authority and direction.

■ The main question in the case is whether or not the interest charged was usurious. The answer depends on whose agent Germain was—the borrower's or the lender's. If he was the lender's, the contract was usurious, because the interest and commission charged together exceed the rate of twelve per cent limited by law.

Appellant contends that Germain cannot be held to be his agent, unless the case of *Edmonds v. Altman,* 89 Wash. 4, 153 Pac. 1082, is overruled. We have examined the record in that case, and find that there was ample evidence, discarded by the court in its opinion, which supported the conclusion that the broker was the lender's agent. The court, however, chose to rest its decision on the bare fact that the lender paid the money to the broker to be transmitted to the borrower, and accepted from the broker a note and mortgage in which he (the lender) was named as payee and mortgagee.

No authority in support of the position is cited in the opinion, and we doubt if any can be found to support it. In any event, it is contrary to the weight of authority, and runs counter to a prior decision of this court. *Moore v. Blackburn,* 67 Wash. 117, 120 Pac. 875. In that case, the court said:

"Agency is a fact to be determined by the peculiar circumstances of each case; so that there are many cases holding that the broker who acts as intermediary between the parties is, under some conditions, the agent of one party, and under other conditions, the agent of the other party. It seems to us, however, that the problem must be solved by determining under whose direction the broker was acting."

By way of dictum, the court added:

"It is undisputed that Kellogg was employed by Blackburn to obtain this loan, and was to be paid a commission for his services. This fact alone, under

the ruling of many cases, would make him the agent of Blackburn.''

The court has never gone this far, but it has repeatedly approved the rule announced as to how the fact of agency is to be determined. We do not think it can be laid down as a hard and fast rule that the borrower makes the broker his agent by the mere fact that he employs him to procure the loan and agrees to pay him a commission; although, according to the weight of authority, the broker is thereby *prima facie* made the agent of the borrower. 2 C. J. 447; *Donaldson v. Kenegy,* 197 Ia. 893, 196 N. W. 587; *Security Co. v. Graybeal,* 85 Ia. 543, 52 N. W. 497, 39 Am. St. 311; *U. S. Bank v. Burson,* 90 Ia. 191, 57 N. W. 705; *Owings v. Howington,* 31 Okla. 651, 124 Pac. 1058; *Cooper v. Headley,* 12 N. J. Eq. 48.

Nor do we think that the lender makes the broker *his* agent by the mere fact that he turns the money over to the broker to be transmitted to the borrower, and accepts a note and mortgage in which he is designated as payee and mortgagee. These are facts and circumstances which should be taken into consideration in determining whose agent the broker is, but in neither case are they conclusive.

From a reading of the evidence in the case, we are satisfied that the finding that Germain was the agent of appellant is supported by a clear preponderance of the evidence. Appellant not only authorized Germain to receive the proceeds of the loan, but directed him how to disburse them. It is not disputed that, subsequent to the maturity of the loan, appellant paid interest direct to respondent. Furthermore, in an endeavor to re-finance the loan after maturity, appellant made an application for a loan on the property in an amount which admittedly included the full obligation to respondent. Taking the evidence as a whole, we

think it may be fairly inferred that appellant's claim, that Germain was respondent's agent, arose from the necessities arising from the defense of usury.

■ Error is assigned on account of the rejection of evidence by the court, which appellant claimed tended to prove there was another action pending on the same debt. It appears that buildings on the mortgaged property had been destroyed by fire. Appellant brought suit on insurance policies for the loss. He joined respondent as a party defendant. The insurance policies carried riders providing for payment, in case of loss, to respondent as mortgagee, as his interest might appear. Respondent, by cross-complaint, sought in that action to enforce his rights against the insurance companies under the riders. We fail to see how this could bar respondent's right to maintain an action on the note and mortgage under Rem. Rev. Stat., § 1125. The respondent's rights arose under different instruments, and the principals against whom he was asserting those rights were not the same. *State Bank of Goldendale v. Smith,* 159 Wash. 195, 292 Pac. 419.

■ By reason of accumulated taxes and assessments, paid by respondent before bringing suit, the amount involved in the action was about five thousand dollars. The court allowed five hundred dollars as attorney's fees. Appellant says this is excessive. In view of the vigorous defense that was interposed, we do not think so.

■■ Error is also assigned that the amount of the supersedeas bond, as fixed by the court, was excessive. No authority is cited, and we know of none, which entitles an appellant to predicate error on an order fixing the amount of the supersedeas bond. Aside from that, however, we do not think the amount fixed (six

thousand dollars) was excessive. It was little more than sufficient to cover the amount of the judgment.

In so far as it conflicts with the views here expressed, the case of *Edmonds v. Altman,* 89 Wash. 4, 153 Pac. 1082, is overruled.

The judgment is affirmed.

ALL CONCUR.